Filed 6/23/23

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| NICHOLAS YEDINAK, | |
| Petitioner, | E080685 |
| v. | (Super.Ct.No. INF2000236) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate from an order of the Superior Court of Riverside County. Magdalena Cohen, Judge. Petition granted.

John J. Duran and Mark R. Foster, attorneys for Petitioner.

No appearance for Respondent.

Michael A. Hestrin, District Attorney and Valerie Tanney, Deputy District Attorney for Real Party in Interest.

Nicholas Yedinak filed this petition for writ of mandate challenging the trial judge's order denying him bail. He argues the order fails to satisfy the legal requirements for pretrial detention articulated in article I, section 12, subdivision (b) of the California Constitution (section 12(b)) and *In re Humphrey* (2021) 11 Cal.5th 135 (*Humphrey*). We agree.

Yedinak is charged with two counts of felony child abuse based on allegations he inflicted severe, nonaccidental injuries to his six-week-old son. For the two years and nine months after arraignment, Yedinak had been out on bail, making each court appearance and living in the community without incident. After his preliminary hearing, the judge issued a pretrial detention order based on a finding that other children in the community would probably not be safe if Yedinak were released pending trial, given the violent nature of the charged crimes.

"While due process does not categorically prohibit the government from ordering pretrial detention, it remains true that '[i]n our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception.'" (*Humphrey*, *supra*, 11 Cal.5th at p. 155.) To order the pretrial detention of a person charged with a violent felony, section 12(b) and *Humphrey* require findings, by clear and convincing evidence, that the person's release would result in a substantial likelihood of great bodily harm to others and that less restrictive conditions are insufficient to vindicate the state's interest in protecting public safety. (§ 12(b); *Humphrey*, at p. 143.) "Allowing the government to detain an arrestee without such procedural protections would violate state and federal principles of equal

2

protection and due process that must be honored in practice, not just in principle."
(*Humphrey*, at p. 143.) Because Yedinak's pretrial detention order is not based on the
individualized assessment section 12(b) and *Humphrey* require, we grant his petition and
direct the judge to vacate the order and hold a new bail hearing.

# I

# FACTS

The victim in this case is Yedinak's son, Doe. At the time of the incident, Doe was
six weeks old and Yedinak was dating the infant's mother, McCoy. According to
McCoy's testimony at the preliminary hearing, she left Doe in Yedinak's care on the
afternoon of January 4, 2020 while she ran an errand. Though her son had seemed
healthy and normal in the hours before she left, she learned upon calling Yedinak on her
way home that Doe had been crying the entire time she'd been gone. When she returned
and heard his cries, she thought they sounded unusual and called his pediatrician for
advice. The pediatrician told her that Doe was probably suffering from gas and
recommended against taking him to the emergency room due to a recent flu outbreak.

Over the next several hours, McCoy closely monitored Doe. Around 4:00 a.m., his
breathing started to sound labored and his legs began twitching, and McCoy immediately
took him to the emergency room. When a CT scan revealed Doe had extensive bleeding
in his brain, the infant was transported to the pediatric intensive care unit at Loma Linda
Hospital where he was diagnosed with a nonaccidental skull fracture most likely caused
by blunt force trauma. The fracture caused significant hemorrhaging in Doe's brain, as

well as retinal and intraspinal hemorrhaging. Further x-rays and CT scans revealed Doe had suffered other injuries as well. He had acute rib fractures as well as fractures in his leg and foot that were at various stages of healing, which suggested prior abuse.

In February 2020, Yedinak was arrested and the People filed a complaint charging him with one count of felony child abuse (Pen. Code, § 273d, subd. (a))[1] and one count of willful cruelty to a child (§ 273a, subd. (a)), both of which carry determinate sentences. At his arraignment, the court set bail at $75,000 and issued stay-away orders prohibiting Yedinak from having any contact with McCoy or Doe. Yedinak posted bail on March 5, 2020 and returned to Los Angeles where he lived and worked as a house painter. For the next two years and nine months, Yedinak complied with the stay-away orders and made each court appearance with his retained defense attorney.

In July 2022, shortly before his third birthday, Doe was reevaluated. His prognosis was poor—he was legally blind, could not move his muscles with purpose, was unable to eat solid foods, and his treating pediatrician believed his condition would not improve.

Based on this new information about the extent of Doe's injuries, on September 8, 2022, the People filed an amended complaint, changing the second count to felony child abuse resulting in paralysis of a permanent nature. (§ 273ab, subd. (b).) This new charge raised Yedinak's exposure to seven years to life.

On October 4, 2022, the People filed a motion to increase bail to $1 million based on the bail schedule for the new count. Without determining Yedinak's ability to pay or

---

[1] Unlabeled statutory citations refer to the Penal Code.

considering alternative conditions of release, Riverside County Superior Court Judge James Hawkins granted the People's motion, set bail at $1 million, and gave Yedinak one month to attempt to post the bond. At the next hearing on November 3, 2022, Yedinak's counsel said his client had been unable to raise enough money to post the bond, and counsel requested an ability to pay hearing. The judge denied the request, and Yedinak was taken into custody.

On December 19, 2022, Yedinak's preliminary hearing took place before Riverside County Superior Court Judge Magdalena Cohen. Through the testimony of McCoy and the investigating detective, the People presented evidence intended to show that the injuries Doe sustained in the first six weeks of his life were nonaccidental, that the symptoms from the skull fracture would have come on immediately, that Yedinak was the only person caring for Doe when the symptoms began, that Doe's brain damage was permanent, and that he was not expected to develop beyond the mental age of a three-year-old child.

At the conclusion of testimony, Judge Cohen found there was sufficient evidence to hold Yedinak to answer for both counts but noted she had "some concerns of what a jury may or may not find in this case." Defense counsel then made a motion to reduce bail back to the original amount of $75,000. He argued Yedinak posed no flight risk because he'd appeared at every hearing since he'd been arrested. He argued Yedinak did not pose a risk of danger to either Doe or members of the public because he had no prior

criminal record in California, no record of domestic violence against McCoy, and—most importantly—had been out on bail for nearly three years with no incident.

The judge told defense counsel she was concerned about public safety. She said she wasn't moved by the fact Yedinak had no history of violence because "the vast majority of homicides don't have [a violent] history either." Noting the stay-away order protected only Doe and McCoy, she asked counsel how she could keep other children in the community safe if Yedinak were released on bail.

Counsel replied, "[W]e can look at his history. . . . He and Ms. McCoy planned to have this child. He doesn't really work with children. Although, certainly when he was out and about, he was often in the presence of children of family members without any problems with any of their children. [¶] This is the one and only accusation that's been made against him for his entire life involving violence against anyone. So I think that if the Court is going to consider conditions of release, it can be that he not—how we usually handle felony cases—not be allowed to be unsupervised in the presence of children, I think would be a reasonable condition of bail setting."

The judge asked how such an order could be enforced given that Yedinak lives outside the county, in Los Angeles. Defense counsel said he believed the prosecution would be diligent about alerting the court if they learned Yedinak was around children, but he agreed there was no way to fully enforce such an order without a full-time supervisor.

6

The judge then issued the following ruling: "At this point, considering all the Humphrey's factors, the Court will set no bail. I do not believe there is an amount [Yedinak] could afford which could probably keep the community safe. Specifically children within the community, given the violence that is alleged here."

Yedinak filed a timely petition for writ of mandate challenging the order.[2]

## II

## ANALYSIS

A.      *Legal Requirements for Pretrial Detention Orders under Section 12(b)*

"It is one thing to decide that a person should be charged with a crime, but quite another to determine, under our constitutional system, that the person merits detention pending trial on that charge." (*Humphrey*, *supra*, 11 Cal.5th at p. 147.) Because "those incarcerated pending trial. . . unquestionably suffer a direct grievous loss of freedom in addition to other potential injuries," detention prior to trial "is the carefully limited exception." (*Humphrey*, *supra*, 11 Cal.5th at pp. 142, 155 [cleaned up].)

Our state Constitution entitles arrestees to bail unless one of a limited number of exceptions applies. (Cal. Const., art. I, § 12.) The exception at issue here, set out in section 12(b), provides that a trial judge may deny bail when a defendant is charged with a felony offense "involving acts of violence on another person . . . when the facts are

---

[2] "While habeas corpus is an appropriate vehicle for challenging the legality of bail grants or deprivations," a writ of mandate is also appropriate where, as here, "the issue is purely legal in nature" and there is therefore "no need for an evidentiary hearing permitted by the procedures governing habeas corpus petitions." (*Gray v. Superior Court* (2005) 125 Cal.App.4th 629, 636.)

evident or the presumption great" and the judge "finds based upon clear and convincing evidence that there is a substantial likelihood the person's release would result in great bodily harm to others."

This exception, which we'll refer to as the violent felony exception, was the subject of the California Supreme Court opinion *In re White* (2020) 9 Cal.5th 455 (*White*). In that opinion, the Court provided guidance on applying the exception's two elements. It explained that, though the first element employs archaic phrasing, its meaning is straightforward. For a judge to find "the facts are evident or the presumption great" simply means the record contains sufficient evidence of the crime to "sustain a conviction" on appeal. (*Id.* at pp. 462, 463.) "Whether that evidentiary threshold has been met is a question a reviewing court considers in the same manner the trial court does: by assessing whether the record, viewed in the light most favorable to the prosecution, contains enough evidence of reasonable, credible, and solid value to sustain a guilty verdict [against the arrestee] on one or more of the qualifying crimes." (*Id.* at p. 463.)

As for the second element, that there is a "substantial likelihood" the person's release would result in "great bodily harm" to others, the constitutional standard "requires more than a mere possibility, and it cannot be based on speculation about the general risk to public safety if a defendant is released." (*In re White* (2018) 21 Cal.App.5th 18, 28.) Section 12(b) "requires more than simply a violent history." (*In re White*, at p. 28.) Rather, the judge "must be convinced that future violence amounting to great bodily injury is substantially *likely* if the defendant were released on bail." (*Ibid.*) And, unlike

the proof supporting the charges, which must only withstand substantial evidence review, proof that the arrestee is dangerous to others must be established by "clear and convincing evidence." (§ 12(b); see *White*, *supra*, 9 Cal.5th at p. 467 [noting that section 12(b) requires that the likelihood of great bodily harm be established by clear and convincing evidence].) As the Court explained in *White*, "[c]lear and convincing evidence requires a specific type of showing—one demonstrating a *high probability* that the fact or charge is true." (*White*, at p. 467 [cleaned up], italics added.)

Less than a year after *White*, our Supreme Court decided *Humphrey*, in which it sketch[ed] the general framework governing bail determinations." (*Humphrey*, *supra*, 11 Cal.5th at p. 152.) Though *Humphrey* involved a claim of excessive bail, the Court also established protections applicable to pretrial detention orders. (*In re Harris* (2021) 71 Cal.App.5th 1085, 1096 (*Harris*).) As relevant here, *Humphrey* held: "An arrestee may not be held in custody pending trial unless the court has made an individualized determination that . . . detention is necessary to protect victim or public safety, or ensure the defendant's appearance, and there is clear and convincing evidence that no less restrictive alternative will reasonably vindicate those interests." (*Humphrey,* at pp. 139-140.) Put another way, *Humphrey* concluded "[pretrial] detention is impermissible unless no less restrictive conditions of release can adequately vindicate the state's compelling interests." (*Id.* at pp. 151-152.)

9

To satisfy this requirement, a trial court must consider each alternative, less restrictive condition and "articulate its analytical process as to why such alternatives could not reasonably protect the government's interest." (*Harris*, *supra*, 71 Cal.App.5th at p. 1105 [vacating the pretrial detention order where "the parties discussed nonfinancial conditions, but the discussion was not extensive" and the trial court "did not actually address any less restrictive alternatives to pretrial detention and did not articulate its analytical process"].) *Humphrey* identified the following examples of less restrictive conditions: "electronic monitoring, supervision by pretrial services, community housing or shelter, stay-away orders, and drug and alcohol testing and treatment." (*Humphrey*, *supra*, 11 Cal.5th at p.154.)

*Humphrey* also held that "[a] court's procedures for entering an order resulting in pretrial detention must . . . comport with other traditional notions of due process," which includes the "obligation to set forth the reasons for its decision on the record and to include them in the court's minutes." (*Humphrey*, *supra*, 11 Cal.5th at p. 155.) "Such findings," the Court explained, "facilitate review of the detention order, guard against careless or rote decisionmaking, and promote public confidence in the judicial process." (*Id.* at pp. 155-156.)

To summarize, then, a trial judge must satisfy four legal requirements before issuing a pretrial detention order under section 12(b). The judge must: (1) find there is sufficient evidence to sustain a guilty verdict against the arrestee on a qualifying felony; (2) find by clear and convincing evidence a substantial likelihood that the arrestee's

10

release would result in great bodily harm to others; (3) find by clear and convincing evidence that no less restrictive condition than detention can reasonably protect the interests in public or victim safety, and the arrestee's appearance in court; and (4) set forth the reasons for their decision on the record and include them in the minute order. (*White*, *supra*, 9 Cal.5th at pp. 463-465; *Humphrey*, *supra*, 11 Cal.5th at pp. 143, 155.)

B.      *Application to Yedinak's Pretrial Detention Order*

Here, though the judge did not say which bail exception she was applying, we assume it was the violent felony exception in section 12(b) because she discussed the violent nature of the charged crimes and the threat Yedinak posed to public safety. Specifically, the judge was worried that even though Yedinak had obeyed the stay-away order during the two years and nine months since his arraignment, he nevertheless posed a risk to "other children" in his community "given the violence that is alleged here" and the fact it would be difficult, if not impossible, to enforce an order requiring him to be supervised around children in Los Angeles County. These considerations led her to conclude there was no amount of bail that Yedinak could afford that "could probably keep the community safe."

In view of the principles discussed above, we find four problems with the assessment underlying the pretrial detention order. First, the judge did not make a finding as to whether the "facts were evident or the presumption great"—that is, whether the record contained substantial evidence Yedinak had committed a qualifying offense under section 12(b). The only indication of her view of the strength of the case against Yedinak

11

was her remark expressing concern about whether a jury could find him guilty based on the evidence presented at the preliminary hearing.

Second, the judge's finding that other children in the community would "probably" not be "safe" if Yedinak were released falls short of the standard set out in section 12(b). As we've seen, that provision requires a finding that the person's release would pose a *substantial* likelihood of *great* bodily harm, not, as the judge found here, a probability of a general threat to safety. (§ 12(b); see *White*, *supra*, 9 Cal.5th at p. 465.)

We also note that, although the judge said she had considered "the Humphrey[] factors," the only factor she discussed on the record was the severity of the charges against Yedinak. To be sure, the nature of the charged crime is a valid consideration when determining whether pretrial detention is necessary, but it cannot be the only consideration. "When making any bail determination, a superior court must undertake an individualized consideration of the relevant factors. These factors include the protection of the public as well as the victim, the seriousness of the charged offense, the arrestee's *previous criminal record* and *history of compliance with court orders*, and the likelihood that the arrestee will appear at future court proceedings." (*Humphrey*, *supra*, 11 Cal.5th at pp. 156, 152, italics added.) Here, the fact Yedinak had no history of violence aside from the serious crimes he is charged with in this case and the fact he'd been released for nearly three years with no violent incidents are also relevant to whether pretrial detention is necessary.

Third, the judge was required to make the risk of harm finding by clear and convincing evidence, and nothing in the record indicates she was aware of that "additional hurdle" imposed by our state's Constitution. (*White*, *supra*, 9 Cal.5th at p. 467.) The People argue we can infer from the record that the judge "was applying a clear and convincing standard when determining the threat to public safety." But *Humphrey* holds otherwise. "*Humphrey* specifically requires, as a matter of procedural due process, that a court entering a pretrial detention order set forth 'the reasons for its decision on the record and to include them in the court's minutes.'" (*Harris*, *supra*, 71 Cal.App.5th at p. 1105 [rejecting the People's invitation to infer the required finding from the record], quoting *Humphrey*, *supra*, 11 Cal.5th at p. 155.)

We agree with *Harris* that there are no "magic words" a judge must recite in making express findings for the record. However, without a clear statement of the judge's findings and reasoning, we cannot ascertain on appeal whether the pretrial detention order safeguards the "state and federal principles of equal protection and due process" that, according to *Humphrey*, "must be honored in practice, not just in principle." (*Humphrey*, *supra*, 11 Cal.5th at p.143.) What is required is a statement that articulates the judge's "evaluative process," set out "with sufficient specificity to permit meaningful review." (*Harris*, *supra*, 71 Cal.App.5th at p. 1105 & fn. 10; see also *id*. at p. 1105 ["generally, an adequate statement of reasons is one that . . . apprise[s] [the reviewing court] of the analytical process by which the trial court arrived at its conclusions"].)

Fourth, as far as we can tell from the record, the judge considered only a single less restrictive alternative: an order prohibiting Yedinak from being in the unsupervised presence of children. However, under *Humphrey* not only must she consider more than one alternative, she must also—in the event she finds the considered alternatives insufficient to protect public safety—articulate why and make the finding by clear and convincing evidence. (*Humphrey*, *supra*, 11 Cal.5th at pp. 152-153; see *Harris*, *supra*, 71 Cal.App.5th at p. 1105 [reversing no bail order where the trial court "did not articulate its analytical process as to why [less restrictive] alternatives could not reasonably protect the government's interests"].) The need to consider other less restrictive alternatives is particularly important in a case like this where the defendant had been released for nearly three years without posing a threat to public safety. (See *In re White*, *supra*, 21 Cal.App.5th at p. 28 [a pretrial detention order must be based on "more than a mere possibility" of harm to the public, "it cannot be based on speculation about the general risk to public safety if a defendant is released"].)

For all these reasons, we conclude the pretrial detention order does not satisfy the requirements set out in section 12(b) and *Humphrey*. Given our conclusion, we need not address Yedinak's alternative argument that, even if the requirements were satisfied, the order lacks evidentiary support.

## III

## DISPOSITION

Let a petition for writ of mandate issue directing respondent Riverside County Superior Court to vacate its pretrial detention order of December 19, 2022 and hold a new hearing at which it considers Yedinak's motion to set affordable bail in a manner that is consistent with section 12(b) and the Supreme Court's decisions in *White* and *Humphrey*.

CERTIFIED FOR PUBLICATION

SLOUGH             

J.

We concur:

RAMIREZ          

P. J.

MENETREZ        

J.